**EXHIBIT 8**

## REPORT DETAILS

**Report Submission Date**
12/10/2022

---

**Reported Company/Branch Information**
Location 989 West Center St, DUT7, , UT, 84054
City/State/Zip: North Salt Lake, UT, 84054, United States )

---

**Amazon Site Code**
DUT7

---

**Please identify the person(s) engaged in this behavior:**
DEVLEN BRIDGES – AREA MGR
ADRIAN CALDERA – OPS MGR
JONATHAN COWAN – HUMAN RESOURCES

**Do you suspect or know that a supervisor or management is involved?**
Yes

**If yes, then who?**
SEE ABOVE

**Is management aware of this problem?**
Do Not Know / Do Not Wish To Disclose

**What is the general nature of this matter?**
HARRASSMENT
DISCIPLINARY FRAUD
CHARACTER ASSASSINATION

**Where did this incident or violation occur?**
DUT7 – AT OR AROUND THE HR DESK

**Please provide the specific or approximate time this incident occurred:**
6/2002

**How long do you think this problem has been going on?**
3 months to a year

**How did you become aware of this violation?**
It happened to me

**Please identify any persons who have attempted to conceal this problem and the steps they took to conceal it:**
PABLAVAR
CELESTIA BROWNING

---

**Details**
COMPLAINT TO HR: REPEATED INCIDENCE OF FRAUD, AND NON-CONSTRUCTIVE COACHING AT DUT7

#1
Devlen, Adcald, Jonathan Cowan

ALLEGATION AGAINST DEVLEN (no longer with amazon):
FRAUD: Devlen literally fabricated the context and tone of a coaching incidence by taking a statement I made out of context, and placed it in context with other material not previously coached or discussed. It had an intentional effect of character assassination.

NON-CONSTRUCTIVE COACHING: Non-constructive coaching destroys the coaching opportunity by failing to provide the most immediate knowledge of incidence to the party most responsible, it may also inflate incidence without gathering sufficient information, and otherwise do harm to the person coached.

CHARACTER ASSASSINATION: Misrepresentation of character, and behavioral intent to portray intra-network a character either socially or morally incompetent, possibly in an attempt to engineer prejudice of disfavor.

ALLEGATION AGAINST ADCALD: FRAUD and CHARACTER ASSASSINATION, NEGLIGENCE
Adcald advocated too aggressively for one depiction of events, and did not maintain the composure of the incidence I presented.
Quite literally, adcald allowed the verbal discussion to depict a social or behavioral disposition, while the written instrument depicts a person critically out of touch with a constructive social and work culture.
Moreover, adcald was not professionally postured to tolerate conflicting representations of incidence, nor was adcald capable to recognize the difference in perception could amount to FRAUD.

When it was brought to the attention of the room the depiction of the events was untrue, Adcald aggressively reasserted the position I claim was in fraud without either suspending the conversation or conducting interrogatory over his direct subordinate.

ALLEGATION AGAINST JONATHAN COWAN, "JC"
JC was approached after this meeting to discuss how to address inconsistencies in the narrative, against questions about simple differences in perceptions. JC distorted statements presented to inappropriately misdirect questions about misrepresentation.
This is the second complaint of FRAUD against JC, who did not encourage managers to amend their coachings, and did not investigate once a more serious statement had been presented.
JC also has a political habit of ignoring crucial information; such as whether another individual was a true witness or participant, whether the coherence of the statements presented was questionable, what the best solution would be for a complex problem, or whether some more discussion of perspectives and expectations could be helpful.

ALLEGATION NARRATIVE
I must apologize for the delay in writing this complaint, it is now several months since the incidence on record. I was made unavoidably busy at the time by matters outside of the workplace.

About one month before his termination, Devlen presented false statements about my conduct under the AM process at DUT7.

I received a very serious coaching statement from him detailing several other Amazon Associate complaints more or less conduct which may have been felt to be too curt in non-specified instances.

Specifically, devlen misstated an allegation of an incidence to which he was a part, and in fact lead contributor.

A quote was provided on the page of the coaching which depicted me as being highly critical of a person whose accommodated health condition Amazon was aware to look out for.

I was depicted as making a statement more or less in malice against the Associate.

What happened in actuality was that I had in fact stated to the associate how appeared in "fine" health. This was a statement in candor, which seemed to be appreciated at the time.

I then proceeded to ask the associate whether the discomfort experienced required immediate attention, or if might be capable to continue in her then-present role.

The Associate stated next that she was okay, but that she was sure some adjustment would be necessary.

I was prepared to call a Learning Ambassador to stand-in, however the Associate stated her condition was not yet overwhelming.

I then RADIOED devlen for his more or less immediate assistance on the floor, for his familiarity with the Associate' accomodation, and also for his repeated assertions then NOT to make accommodations.
(We have since abandoned that practice of his, and will routinely make adjustment for discomfort over preference.)

I advised the Associate we would have devlen appear to make any appropriate considerations, for his familiarity and confidentiality related to the accommodation.

I was under the impression the Associate could even have departed, the discretion general to the AM any action necessary for individual well-being.

I did not receive a response from devlen. The incidence took place near the labor board, at C-D Cluster spur where the Associate was tasked.

Devlen was situated on the dock, was somehow engaged in a manner which may not have allowed him to respond.

I RADIOED devlen a second time, and he advised he would come out onto the stow floor before too long.

It was more than fifteen minutes before devlen arrived.

I was occupied with Floor Monitoring duties, including labor tracking, individual stow rate monitoring, and any other safety conditions.

I passed the Associate several times in my other duties, and she did not demand my attention directly, and did not demand any other individual's attention.

Several minutes later I found devlen had arrived and had addressed the issue. Based in his direct knowledge of the issue, devlen made a minor path adjustment for the Associate who continued through to the end of Sort Shift.

Devlen became critical over my handling of the situation. I explained I had communicated every element stated above, the AM would arrive with more direct discretion, the issue was not yet critical.

At the time of the coaching, I raised the objection and clarified the incidence verbally.

Devlen accepted my explanation.

Once the coaching issued, it came blindsidedly, out of issues not prior raised, and of dubious import.

However the management team therein, devlen and adcald, refused to acknowledge the difference in the narrative and more or less accused me of refusing constructive coaching.

I was depicted as being somehow beligerent and even unconscionable.

I was so stunned at the abuse I left the room paralyzed, and devlen submitted the coaching without my signature, with a specious statement of my neither accepting nor declining.

I later brought this complaint to the attention of the Human Resources manager who improperly deflected responsibility for what I openly stated was a kind of Fraud; both in the conference with Devlen and Adcald, and in confidence Jonathan Cowan more or less attempted to blame me for delay in response which rendered any single individual issue unaddressable.

Blamed me, Jonathan Cowan took statements I made about my personal life at that time as direct and causal abuses of mine against individuals who were not named on the complaint, completely distorting the narrative of events.

Jonathan Cowan made no record of anything that transpired thereon, so only the incoherence of the written document is tangible. The management team undertook so little diligence on these problems more or less attempting to prove either the Amazon Human Resources network is corruptible and neglectful, and otherwise were attempting to render me more vulnerable to criticism, social engineering, bias or abuse otherwise.

GENERAL STATEMENT
Responsible Associates and Process Assistants, people, always take personal accountability to the people who feel they were wronged.

Timely verbal/written coaching is essential to defining problems of behavioral disorder, whether critical or negligible, to clarify and ameliorate differences in perspective. To avoid wrongful affection of any single issue.

In verbal discussion over the coaching incidence, devlen was not more professionally postured than criminal, and could not account for critical variance in the substance of the discussion. Nor did offer to amend the statement on the coaching to allow for actual "coaching" wherein we discuss issues more in-depth, with more correct informational standards.

The conference over this written coaching was essentially a bullying session; very characteristic of adcald, who prefers an "in your face" approach to issues discussion, and sometimes appears to glorify violation of trust at the opportunity to exaggerate animus.

The correct and best approach is to amend the coaching statement to fit any substantive discussion, and to maintain the old statement only as a discussion point, so to deflect non-constructive bias whether affirmative or negative to any intended result.

I have not seen the Management Team take a personal interest to clarify its own misapprehensions. The several complaints put forward are similar in that adcald and Jonathan Cowan both routinely violate the law, and breach confidence to bias toxic coaching standards.

OTHER LIABILITIES: This written coaching issued the very same week as Amazon Technical Academy was making decisions for admissions. The ATA admissions paradigm rejects any applicant with an active coaching, an "ADAPT," and this coaching may have been issued to prevent or pre-empt a favorable decision rel. to ATA.

When addressed this question, the HR team misadvised me insisting the ATA option would not reject an applicant due to a behavioral coaching. Jonathan Cowan or Celestia Browning may have been committed to dissolving any appearance of impropriety rather than have brought this problem and question to task sooner, so as be less damaging.

Velaca@amazon.com
s/Carlos Velasquez
12/4/22

---

**Uploaded Files**
  1. cmpl1.pdf

  2. EthicsPoint.pdf
     FIRST ETHICS POINT ISSUE – LOST PASSWORD

---

**Follow-Up Notes**
1/20/2023 6:36 AM
REQUEST FOR FURTHER REVIEW AND ESCALATION

Please conduct further review in light of this complaint, and the lack of disposition thereof.

The HR team in this region did not conduct a sufficient inquiry with jammcgae, did not evaluate the breadth of her perceptions, nor did any these individuals conduct a Seek To Understand dialogue with me on the separate ADAPTable question.

I am aware that jammcgae may yet be with AMAZON, she transferred out of state.

A statement by jammcgae has not been evaluated on a question of FRAUD in the representation of an ADAPT.

jammcgae was the individual subject of the complaint in question where a quote of something I said in candor, which was accepted in candor at the time, was taken willfully out of context by a former AM (devlen) who actively and passively contributed to jammcgae complained of disposition.

I was the subject an ADAPT late in the summer of 2022 which mischaracterized an incidence, and per the original narrative of the complaint I filed here, was a total and deliberate distortion by my then AM (devlen) who delayed against my repeated callouts and actively contributed to jammcgae personal discomfort complained against. The complaint was generally against two individuals, devlen (no longer with AMAZON) for actual FRAUD in the management transaction, and adcald (L6) for totally and deliberately failing to hear the claim of FRAUD when it was presented.

In my original account of this matter, I reported how because of the sensitivity of the ADAPT, at jammcgae approval out of consideration that her condition was workable, I would have the manager come consult her.

The QUESTION is whether she recalled my radio communication to the manager, and whether she recalls how I reassured her the manager would address her situation.

The QUESTION is also whether she recalled having stated to me she could continue to work in the Pick to Buffer (Puller) capacity until the manager arrived.

Certainly if she had requested immediate relief, it would have been provided.

devlen did not appear for 15-20 minutes, and directly contributed to delays in addressing jammcgae concerns. I radioed him multiple times before my Standard Work Process took me into a different task.

It was unethical and even criminal for him to quote jammcgae in the way that he did, and if there was an extant question of how we were addressing injuries, sickness, and accomodations, the ADAPT did not discuss it. It was to make a political injury against me.

My general perspective is that no single one of the issues rel. was fully verifiable, and the HR team did not bother to conduct a STU with me in a way that was timely to this issue.

It was misused by devlen and adcald primarily, I think, to vent fear and frustration at devlen own personal issues, and adcald personal biases to favor management establishment.

Adcald being the subject here, is extremely aggressive and biased to be postured in Malice over the Appearance of Error. When the subject a FALSE STATEMENT was presented he immediately discredited me. Adcald in this instance disfavors me too much, and prefers total submission to frivolous and destructive expressions of company authority.

Adcald may not have been aware devlen was lying; but he refused to listen when I explained so, refused to return the matter to HR for further STU, and more or less the conversation into dysfunction.

As reported previously, it is a strategy he knows how to maintain when he believes the team is not biased to prevent its occurrence. adcald is capable to deploy falsification and misdirection inappropriately and in a manner which destroys individual confidence at the Supervisory and Management relationship.

My demand in this instance is to EXCORIATE the ADAPT in question from my record, or otherwise have it reviewed.

My other demand is to have adcald disciplined or terminated from employment; reinforcement of falsification of behavioral standards of others, beyond violating the rules, is potentially highly extreme. No manager should be allowed to be practice abuse.

It can lend an entire behavioral queue, a tool in social engineering, to disempower and mislead others against the target individual.

REQUEST THAT KERRI A. NOT REVIEW

My original expression of this event was in part based in a statement of how the ADAPT in question was not facially acceptable, for all of the negativity claimed expressed by me it was not invested in credible or coachable representations of actual incidence; sufficient that any actual violation of a company policy were tangible, it was speculated against me in bad faith.

I was traumatized by the presentation for its unexpectedness, and its falsehoods. I refused to acknowledge it - I attempted to discuss the nature of "ACCEPT" and "REJECT" terms on an ADAPT process with Kerri, and should could not clarify that for me which signaled to me that she was actively misleading in the conversation about how much diligence she could have conducted.

Kerri made several critical oversights which amounted to improper deflections of bias;

(1) She appeared to insinuate I may have been using the ethics complaint retributively;
(2) She asserted the authority of the ADAPT without having interviewed the individual whose statement was subject;
(3) She disavowed an understanding of what FRAUD is, as any representational proscription;
(4) She left the dialogue in an unresolved posture, too general, and may have insinuated there was legal context involved.
(5) She was also unable to directly advise Accept/Reject conditions of ADAPTS.

My goal here is to openly and visibly pre-empt any further kind of FALSE representations from Management on site at DUT7 - not to draw general conflicts in the process of reviewing ADAPTS.

I might have treated these discussions very differently; my general impression at this time is that ADAPTs dialogues are not treated as reliable discussions or coachings, the reporting standard in this instance is extremely low.

Kerri's Bias for Action at a truth-finding did not go to the length to interview jammcgae on whether she was aware the Area Manager had been notified by radio to come to her attention.

She may have been left with a wrong impression, and the Management dialogue in this instance may have been knowingly and wrongfully misused by the former AM (devlen), and the current L6 (adcald) at the time of the report.

I struggled to report this to adcald who was in-person at the presentation, and he refused to recognize my objections and reinforced the ADAPT process in the face conflicting information.

adcald expresses improper bias in this instance as person not on-record, but reinforcing a destructive standard when coaching and issuing ADAPTS.

Kerri struggles to understand in-person how this was the subject of the complaint, and misdirected our conversation to reinforce her discussion of cloture as insinuated retribution against the former L4 devlen.

She also lacks supervisory sensitivity over management questions; FRAUD does not even appear to be plausible discussion at issue on an ADAPT.

CONCLUSION

My view on these ADAPTS is finally that no single one of them could have resulted in a disciplinary instance. That is, the ADAPTS were unrecognizable to me after several weeks of delay at issue, so my inclination to accept "coaching" was treated in bad confidence.

Moreover, we never engaged at DUT7 any Seek To Understand conference timely to any single issue so that there was no immediate and personal oversight entailed; I was literally depicted as being aggressive and overbearing; I think the individuals involved in the issue concocted social distortions of the incidences and the discussion in an attempt to valorize themselves while they were actively harming total confidence.

Kerri is not postured to mitigate the complaint on this scale; the relationship between a true or false statement was not investigated sufficiently to maintain confidence in the record of the documentation referenced on ADAPT. This was one of several very hostile situations engendered by [adcald] presumption and false zealousness.


Please conduct further review in light of this complaint, and the lack of disposition thereof.
12/10/2022 6:20 AM
This is a second facsimile report as 256636404601 (report key).
I lost the password to the first.

---

**Follow-Up Questions/Comments**
There are no questions asked or comments from the organization.

---

**Chat Transcripts**
There are no chat transcripts for this incident.