

Carlos <cfv1983@gmail.com>

**EXHIBIT 17**

**Case 20230304-630632 : Appeal Hearing Scheduled [ ref:_00D3t2mKvO._5003t1g96p1:ref ]**
6 messages

**Exact HR** <hr@exact.hr.amazon.dev> Fri, Mar 3, 2023 at 6:21 PM
To: "cfv1983@gmail.com" <cfv1983@gmail.com>

3/3/2023

**Carlos Velasquez**

Dear **Carlos,**

On 03/03/23 11:01 AM you notified us that you wished to appeal your Final Written Warning through the Amazon Appeals Process by meeting with the Senior Site Leader. We have scheduled the requested Appeal Hearing and the details are below.

## Date and Time:
## Wednesday, 3/8/2023 at 9:00 AM MST

## Location:
### Call in using your phone:
### United States Toll-Free (1): +1 855-552-4463
### Meeting ID: 8080 75 4000
### Dial-in attendees must enter *7 to mute or unmute themselves.

If you have relevant documentation, which you wish to be considered, need an interpreter, have witnesses you believe we should speak to, or need any accommodation for a disability at the hearing, please let me know no later than 24 hours prior to the appeal hearing.

The appeal process will have you presenting your concern directly to the Senior Site Leader. You may not bring anyone with you to the Appeal Hearing. If you have questions about this, please contact me. If, for any unforeseen and unavoidable reason, you are not able to attend the Appeal Hearing, please contact me as soon as possible. Also, if you have any questions, please feel free to contact me.

Best regards,
BA

ref:_00D3t2mKvO._5003t1g96p1:ref

---

**Carlos V** <cfv1983@gmail.com> Fri, Mar 3, 2023 at 7:14 PM
To: Exact HR <hr@exact.hr.amazon.dev>

Greetings to Exact HR,

I may have made a decision in error where I elected to discuss with site leadership this subject.

Some of what I have to say relates to several other complaints I have, and I would prefer to maintain some confidence given that this involves a greater subject breadth than any single instance.

Please allow this APPEAL to follow a CENTRALIZED process, I was not aware I had received a final written warning and eouod have selected the CENTRQLOZED process was I fully informed.

Thanks
CV

Sent from my iPhone

> On Mar 3, 2023, at 6:21 PM, Exact HR <hr@exact.hr.amazon.dev> wrote:
>
> [Quoted text hidden]

---

**Carlos** <cfv1983@gmail.com> Tue, Mar 7, 2023 at 3:18 PM
To: Exact HR <hr@exact.hr.amazon.dev>

Greetings,

I was not responded to previously.
A much better day, one which is not rushed, will be Friday 3/10/23.
I simply have too much on my plate this afternoon to have prepared a full presentation which forms the basis for my appeal.
I have quite a bit of information to present, and would like to reschedule the hearing.

I have had today a separate conference with Human Resources on what I am going to claim is a related problem.
The time required to consult with HR competes with the time required to prepare for this interview.
Is this the appropriate email to forward documentation to?

PLEASE RESPOND.

Sincerely,
CV

[Quoted text hidden]

---

**Exact HR** <hr@exact.hr.amazon.dev> Tue, Mar 7, 2023 at 3:32 PM
To: "cfv1983@gmail.com" <cfv1983@gmail.com>

Hello Carlos,

Thank you for your email and we are sorry that you did not receive a reply to your previous email. All appeals are heard with a Sr Leader from another site, so all hearings are fair and consistent. We just received notification that the leader we had assigned to your case unfortunately, will not be able to join due to a family emergency. We are in the process of getting your appeal rescheduled with a new leader. Due to the timeframe, we will be moving your appeal to either Thursday or Friday - we will have it rescheduled by end of day today.

As for any documents, you can respond to this email and attach anything you need. We will make sure it is attached to

your appeals case.

Regards,
PIE Appeals Team - CR

EXHIBIT
17

--------------- Original Message ---------------
**From:** Carlos [cfv1983@gmail.com]
**Sent:** 3/7/2023, 5:18 PM
**To:** hr@exact.hr.amazon.dev
**Type:** Re: Case 20230304-630632 : Appeal Hearing Scheduled [ ref:_00D3t2mKvO._5003t1g96p1:ref ]

Greetings,

I was not responded to previously.
A much better day, one which is not rushed, will be Friday 3/10/23.
I simply have too much on my plate this afternoon to have prepared a full presentation which forms the basis for my appeal.
I have quite a bit of information to present, and would like to reschedule the hearing.

I have had today a separate conference with Human Resources on what I am going to claim is a related problem.
The time required to consult with HR competes with the time required to prepare for this interview.
Is this the appropriate email to forward documentation to?

PLEASE RESPOND.

Sincerely,
CV

[Quoted text hidden]

---

**Exact HR** <hr@exact.hr.amazon.dev> Tue, Mar 7, 2023 at 5:55 PM
To: "cfv1983@gmail.com" <cfv1983@gmail.com>

3/7/2023

Carlos Velasquez

Dear Carlos,

On 3/3/2023} you notified us that you wished to appeal your Termination through the Amazon Appeals Process by meeting with the Senior Site Leader. We have scheduled the requested Appeal Hearing and the details are below.

Date and Time: Friday 03/10/23 at 8:00 AM MST

Location: Call in using your phone:
United States Toll-Free (1): +1 855-552-4463
Meeting ID: 8080 75 4000
Dial-in attendees must enter *7 to mute or unmute themselves

If you have relevant documentation, which you wish to be considered, need an interpreter, have witnesses you believe we should speak to, or need any accommodation for a disability at the hearing, please let me know no later than 24 hours prior to the appeal hearing.

The appeal process will have you presenting your concern directly to the Senior Site Leader. You may not bring anyone with you to the Appeal Hearing. If you have questions about this, please contact me. If, for any unforeseen and unavoidable reason, you are not able to attend the Appeal Hearing, please contact me as soon as possible. Also, if you have any questions, please feel free to contact me.

Best regards,
PIE Appeals Team - CR

ref:_00D3t2mKvO._5003t1g96p1:ref

---

**Carlos** <cfv1983@gmail.com> Thu, Mar 9, 2023 at 6:36 AM
To: Exact HR <hr@exact.hr.amazon.dev>

I will be there, thank you.
I have provided some relevant documents, and a written statement since there is a lot of ground to cover.
Thank you!

-CV - velaca
[Quoted text hidden]

---

**2 attachments**


**Binder1_Redacted.pdf**
1854K

**VELACA_talkingpoint_forappeal.pdf**
84K

TALKING POINTS

EXHIBIT 17

I must state in the first instance, I am not in disagreement with policy direction being reviewed.

A pdf of attachments is provided, documents are in the order of relevance to the numbered list below.

I asked for this APPEAL on a FINAL WRITTEN WARNING to request an EXCEPTION from the rule implementing a FINAL WRITTEN WARNING, on several Bases.

(1) The ADAPTS as expressed do not reflect the STU engaged between myself and the manager, the process that way is not guaranteed to be in good faith;

(2) I have absolutely critical stress factors rel. to an ongoing complaint of Character Assassination/Harassment against an L6 on-site who has routinely enforced false standards of issue, i.e. False Declarations on ADAPTS process on in-person context – I fear the cause of these errors is unnecessary anxiety coerced on my in CONTEMPT;

(3) I have even more critical stress factors rel. to extrinsic legal issues, which I am more hesitant to disclose (though I will provide some part of it), I have a serious piece of litigation suffering criminal misconduct under the Federal court which I was also filing at the same time as the first ADAPT took precedence – I will respect this information is not disclosed to my Management Team in CONFIDENCE because it may change their behavior.

(1) BAD STU REPRESENTATION BY THE L4 AT ISSUE

The FIRST instance of this process *depicted* an individual flippantly using the scanner as a cause for issue; I had actually explained that I may have had some kind anxiety rel. congitive lapse. I verbally explained this to the manager – the documentation provided destroys trust in the expression therefore, this was an instance of unforeseeable freak human error.

In my view this is a trust versus bias issue; I think the manager may have other biases which he or she is attempting to misdirect, or reserve, meaning the ADAPT is NOT interested to capture a true Root Cause at a pragmatic policy level discussion, even though it is severe in its tone to have to take seriously.

It has the power to destroy whatever real coaching opportunity there is, to misstate or misrepresent divergence of perspectives.

The ADAPT instead was delivered on the dock with the oversight of an L6 against whom I presenting a complaint serious misconduct across 18 Months; I fear the manager at issue is attempting to sensitize the most critical elements of this discussion rather than relate to me directly.

The HR policy level discussion is simply too prejudiced to recognize this discussion as anything other than Insubordination; the prejudice, I fear, is intentionally misplaced.

HR on-site is not prejudiced to represent the Associate versus Manager where a policy dictum appears violated, even if the Root Cause discussion has not been addressed.

The SECOND instance took place in mid to late February, and was the exact same error. I say "error" because I literally could not have anticipated it; it was not like forgetting something and then remedying it later while preoccupied, it was an unforeseeable cognitive/rational lapse.

The manager may have recognized I was suffering a Panic Attack, and rather than hear the scope of problem, he or she became aggressive to express procedural override – an element of direct and intentional misbehavior.

Rather than hear me out, and generate a more sensitive level of discussion, she ignored me and repeated aggressively the policy standard sought. More or less attempting to discipline me without appreciating my most direct position, and so generated a second disposition on delivery of a verbal STU.

Again, my interest was to address a ROOT CAUSE and not discuss an excuse per se; the causes of such an anxiety could tolerate disclosure with manager, she is however not routinely postured to hear criticism of her active approach.

The L4s aversion to the appearance of being discredited while palpable, is also forgivable – even if not understanding the problem it is not out of alignment with an

INSIST ON THE HIGHEST STANDARDS approach when discussing an UNCHARACTERISTIC issue.

EXHIBIT
17

(2)

I have attached documents with details on this subject; I have a meeting scheduled with Human Resources (Exact HR) 3/7/2023 to discuss the complexity of this problem and issue.

I seem to have become a target possibly based in management behavioral queues surrounding False Statements rel. to questions of my conduct. I have attempted to demonstrate at least THREE instances with THREE different managers wherein an L6 critically disrupts a discussion to coerce the entry, to ignore valuable information, and to disfavor further fact finding.

May relate to ADAPTS discussion, there are many numerous instances on a day to day basis wherein we direct favor and sometimes disfavor, where discussion of variance and communication suffer disposition related to these false statements, where some otherwise remediable oversight does not give way to discussion but gives way to threatening characterizations, misrepresentations, and otherwise resurrects discussions where I suffered excessive disfavor.

This type of low-level retributive context may have been more prevalent early in december, and may have contributed to excessive stress.

UPDATE: The issue represented is under investigation, and must be kept in confidence. I consider this discussion to be confident, given it is to some extent beyond the immediate scope of on-site Associates.

TIMELINE:

12/10/22: I initiated a complaint.

12/15/22: Meeting with HR Regional Mgr.

12/22/22: Request for Further Investigation (HR did not reply)

2/25/23: New Ethics Complaint Init. Against the HR Mgr.

3/3/23: Meet to Speak engaged.

EXHIBIT 17

(3)

I have unrelated independent civil litigation ACTIVE during this time, which does require an enormous level of effort.

The litigation presently suffers further obstruction, and is a several years effort suddenly imperiled at what I have alleged is criminal misconduct.

Whatever prejudices or preconceptions you, or any of us may have about Pro Se and prejudiced legal or civil claims, I assure in confidence I am in good faith. Moreover, any of us may also understand that an actual Fraud committed by a Federal Officer works to disestablish the individual critically at the level of him most conscious efforts.

I advise you, the individual liability for criminal and political doing is extreme to the victim; the level of energy is very different from that energy I was applying my at Process Assistant role – the assistancy is far more critically brief, and finds reward and correction/rebuke to often be alignment with the policy scope. Corruption threatens to discredit and destroy that capacity.

For whatever reason, the energy I had committed to my extrinsic legal process may have undermined my conscious attention. (I was holding back to back 80 to 100 hour work weeks)

Given the scale of anxiety against wrongful treatment, and the limited evidence I have provided of having to actually think about, work about, the subject of ministerial corruption an EXCEPTION to protect this tenured associate (4 going on 5 years since 10/31/2018) from personal dispositions under abuse seems fitting.

I thought to include this when I recognized these lapses both occurred related to my having to raise issues.

TIMELINE: 12/1/22 I filed an Appellate Brief in U.S. Court of Appeals for the Tenth Circuit.

CLOSE

On-Site, there has become a tacit policy to allow statements in complaint standing at ADAPTS based on mere Individual perceptions. That is, I have been encouraged by HR and L6 managers to admit as valid any kind of complaint against any statement, any kind of conduct.

INSIST ON THE HIGHEST STANDARDS may respect that I have seen uncharacteristically low standard of issue on documenting an addressing substantive issues on these ADAPTS; the strategy here is ATTRITIVE, to make or break CONFIDENCE based in whether we agree on conformity to the process and Standard Operating Procedure, this includes manager caprices.

I fear a holistic disposition motivates manager misbehavior, these individuals threaten, collude, or are naive to catastrophic conditions for their Process Assistant.

What is left are lingering questions of the behavioral integrity of on-site leadership. This question alone requires SEPARATE INTERVENTION.

All these elements generate difference at an unremediable scale; quite literally the company is misled about my performance, my conduct, and my active potential.

Constructively, because of their repeated high-level pessimism, they are unreachable, and  not believable; they have neglected the STATUS QUO in favor of personally disinterested policy prejudice.

More plainly, I simply have no idea how I effectively stand with my team because of the depth Character Assassination instigated from the management level; because these issues are a reality, it would be convenient and practical to reject a Final Written Warning status, and even to reject the ADAPT altogether.

BECAUSE whole elements of the interpretable prejudice of a L4 manager are in question;

BECAUSE manager expressions are outside of the confidence of any verbal STU which are vague to compare MALICE of DISTRUST;

BECAUSE the INTEGRITY of the management dialogue here is broadly in question, HARRASSMENT and SOCIAL ENGINEERING are close and evaluable terms based in the variance between the manager and associate reporting;

BECAUSE there are conditions relevant to the timing of these issues which are CONFIDENT to this Process Assistant, an experienced member of our management team, where excess STRESS is a question;

BECAUSE the management team may yet harbor improper prejudices and reservations which disrupt intended issues, AMAZON LLC should consider to make an EXCEPTION from a FINAL WRITTEN WARNING status, and may also choose to REJECT one or both of these ADAPTS.

Please value the integrity of all individuals.

S/Carlos Velasquez – velaca – AMZL - L3PA

EXHIBIT
17

INFORMATION WHICH MAY RELATE TO
AN APPEAL FROM
A FINAL WRITTEN WARNING

MEETING RE-SCHEDULED 3/10/23 @ 8AM VIA TELEPHONE

SUBJECT ASSOCIATE: VELACA

SOME NAMES AND INFORMATION IN THIS DOCUMENT ARE REDACTED TO PROTECT IDENTITY IN PERFECT CONFIDENCE

EXHIBIT 17

REPORT DETAILS

**Report Submission Date**
12/10/2022

**Reported Company/Branch Information**
Location 989 West Center St, DUT7, , UT, 84054
City/State/Zip: North Salt Lake, UT, 84054, United States )

**Amazon Site Code**
DUT7

**Please identify the person(s) engaged in this behavior:**
DEVLEN BRIDGES - AREA MGR
ADRIAN CALDERA - OPS MGR
JONATHAN COWAN - HUMAN RESOURCES

**Do you suspect or know that a supervisor or management is involved?**
Yes

**If yes, then who?**
SEE ABOVE

**Is management aware of this problem?**
Do Not Know / Do Not Wish To Disclose

**What is the general nature of this matter?**
HARRASSMENT
DISCIPLINARY FRAUD
CHARACTER ASSASSINATION

**Where did this incident or violation occur?**
DUT7 - AT OR AROUND THE HR DESK

**Please provide the specific or approximate time this incident occurred:**
6/2002

**How long do you think this problem has been going on?**
3 months to a year

**How did you become aware of this violation?**
It happened to me

**Please identify any persons who have attempted to conceal this problem and the steps they took to conceal it:**
PABLAVAR
CELESTIA BROWNING

**Details**
COMPLAINT TO HR: REPEATED INCIDENCE OF FRAUD, AND NON-CONSTRUCTIVE COACHING AT DUT7

#1
Devlen, Adcald, Jonathan Cowan

ALLEGATION AGAINST DEVLEN (no longer with amazon):
FRAUD: Devlen literally fabricated the context and tone of a coaching incidence by taking a statement I made out of context, and placed it in context with other material not previously coached or discussed. It had an intentional effect of character assassination.

NON-CONSTRUCTIVE COACHING: Non-constructive coaching destroys the coaching opportunity by failing to provide the most immediate knowledge of incidence to the party most responsible, it may also inflate incidence without gathering sufficient information, and otherwise do harm to the person coached.

CHARACTER ASSASSINATION: Misrepresentation of character, and behavioral intent to portray intra-network a character either socially or morally incompetent, possibly in an attempt to engineer prejudice of disfavor.

ALLEGATION AGAINST ADCALD: FRAUD and CHARACTER ASSASSINATION, NEGLIGENCE
Adcald advocated too aggressively for one depiction of events, and did not maintain the composure of the incidence I presented.
Quite literally, adcald allowed the verbal discussion to depict a social or behavioral disposition, while the written instrument depicts a person critically out of touch with a constructive social and work culture.
Moreover, adcald was not professionally postured to tolerate conflicting representations of incidence, nor was adcald capable to recognize the difference in perception could amount to FRAUD.

When it was brought to the attention of the room the depiction of the events was untrue, Adcald aggressively reasserted the position I claim was in fraud without either suspending the conversation or conducting interrogatory over his direct subordinate.

ALLEGATION AGAINST JONATHAN COWAN, "JC"
JC was approached after this meeting to discuss how to address inconsistencies in the narrative, against questions about simple differences in perceptions. JC distorted statements presented to inappropriately misdirect questions about misrepresentation.
This is the second complaint of FRAUD against JC, who did not encourage managers to amend their coachings, and did not investigate once a more serious statement had been presented.
JC also has a political habit of ignoring crucial information; such as whether another individual was a true witness or participant, whether the coherence of the statements presented was questionable, what the best solution would be for a complex problem, or whether some more discussion of perspectives and expectations could be helpful.

ALLEGATION NARRATIVE
I must apologize for the delay in writing this complaint, it is now several months since the incidence on record. I was made unavoidably busy at the time by matters outside of the workplace.

About one month before his termination, Devlen presented false statements about my conduct under the AM process at DUT7.

I received a very serious coaching statement from him detailing several other Amazon Associate complaints more or less conduct which may have been felt to be too curt in non-specified instances.

Specifically, devlen misstated an allegation of an incidence to which he was a part, and in fact lead contributor.

A quote was provided on the page of the coaching which depicted me as being highly critical of a person whose accommodated health condition Amazon was aware to look out for.

I was depicted as making a statement more or less in malice against the Associate.

What happened in actuality was that I had in fact stated to the associate how appeared in "fine" health. This was a statement in candor, which seemed to be appreciated at the time.

I then proceeded to ask the associate whether the discomfort experienced required immediate attention, or if might be capable to continue in her then-present role.

The Associate stated next that she was okay, but that she was sure some adjustment would be necessary.

I was prepared to call a Learning Ambassador to stand-in, however the Associate stated her condition was not yet overwhelming.

I then RADIOED devlen for his more or less immediate assistance on the floor, for his familiarity with the Associate' accomodation, and also for his repeated assertions then NOT to make accommodations.
(We have since abandoned that practice of his, and will routinely make adjustment for discomfort over preference.)

I advised the Associate we would have devlen appear to make any appropriate considerations, for his familiarity and confidentiality related to the accommodation.

I was under the impression the Associate could even have departed, the discretion general to the AM any action necessary for individual well-being.

I did not receive a response from devlen. The incidence took place near the labor board, at C-D Cluster spur where the Associate was tasked.

Devlen was situated on the dock, was somehow engaged in a manner which may not have allowed him to respond.

I RADIOED devlen a second time, and he advised he would come out onto the stow floor before too long.

It was more than fifteen minutes before devlen arrived.

I was occupied with Floor Monitoring duties, including labor tracking, individual stow rate monitoring, and any other safety conditions.

I passed the Associate several times in my other duties, and she did not demand my attention directly, and did not demand any other individual's attention.

Several minutes later I found devlen had arrived and had addressed the issue. Based in his direct knowledge of the issue, devlen made a minor path adjustment for the Associate who continued through to the end of Sort Shift.

Devlen became critical over my handling of the situation. I explained I had communicated every element stated above, the AM would arrive with more direct discretion, the issue was not yet critical.

At the time of the coaching, I raised the objection and clarified the incidence verbally.

Devlen accepted my explanation.

Once the coaching issued, it came blindsidedly, out of issues not prior raised, and of dubious import.

EXHIBIT 17

However the management team therein, devlen and adcald, refused to acknowledge the difference in the narrative and more or less accused me of refusing constructive coaching.

I was depicted as being somehow beligerent and even unconscionable.

I was so stunned at the abuse I left the room paralyzed, and devlen submitted the coaching without my signature, with a specious statement of my neither accepting nor declining.

I later brought this complaint to the attention of the Human Resources manager who improperly deflected responsibility for what I openly stated was a kind of Fraud; both in the conference with Devlen and Adcald, and in confidence Jonathan Cowan more or less attempted to blame me for delay in response which rendered any single individual issue unaddressable.

Blamed me, Jonathan Cowan took statements I made about my personal life at that time as direct and causal abuses of mine against individuals who were not named on the complaint, completely distorting the narrative of events.

Jonathan Cowan made no record of anything that transpired thereon, so only the incoherence of the written document is tangible. The management team undertook so little diligence on these problems more or less attempting to prove either the Amazon Human Resources network is corruptible and neglectful, and otherwise were attempting to render me more vulnerable to criticism, social engineering, bias or abuse otherwise.

GENERAL STATEMENT
Responsible Associates and Process Assistants, people, always take personal accountability to the people who feel they were wronged.

Timely verbal/written coaching is essential to defining problems of behavioral disorder, whether critical or negligible, to clarify and ameliorate differences in perspective. To avoid wrongful affection of any single issue.

In verbal discussion over the coaching incidence, devlen was not more professionally postured than criminal, and could not account for critical variance in the substance of the discussion. Nor did offer to amend the statement on the coaching to allow for actual "coaching" wherein we discuss issues more in-depth, with more correct informational standards.

The conference over this written coaching was essentially a bullying session; very characteristic of adcald, who prefers an "in your face" approach to issues discussion, and sometimes appears to glorify violation of trust at the opportunity to exaggerate animus.

The correct and best approach is to amend the coaching statement to fit any substantive discussion, and to maintain the old statement only as a discussion point, so to deflect non-constructive bias whether affirmative or negative to any intended result.

I have not seen the Management Team take a personal interest to clarify its own misapprehensions. The several complaints put forward are similar in that adcald and Jonathan Cowan both routinely violate the law, and breach confidence to bias toxic coaching standards.

OTHER LIABILITIES: This written coaching issued the very same week as Amazon Technical Academy was making decisions for admissions. The ATA admissions paradigm rejects any applicant with an active coaching, an "ADAPT," and this coaching may have been issued to prevent or pre-empt a favorable decision rel. to ATA.

When addressed this question, the HR team misadvised me insisting the ATA option would not reject an applicant due to a behavioral coaching. Jonathan Cowan or Celestia Browning may have been committed to dissolving any appearance of impropriety rather than have brought this problem and question to task sooner, so as be less damaging.

Velaca@amazon.com
s/Carlos Velasquez
12/4/22

---

**Uploaded Files**

1. cmpl1.pdf
2. EthicsPoint.pdf
   FIRST ETHICS POINT ISSUE - LOST PASSWORD

---

**Follow-Up Notes**
1/20/2023 6:36 AM
REQUEST FOR FURTHER REVIEW AND ESCALATION

Please conduct further review in light of this complaint, and the lack of disposition thereof.

The HR team in this region did not conduct a sufficient inquiry with jammcgae, did not evaluate the breadth of her perceptions, nor did any these individuals conduct a Seek To Understand dialogue with me on the separate ADAPTable question.

I am aware that jammcgae may yet be with AMAZON, she transferred out of state.

A statement by jammcgae has not been evaluated on a question of FRAUD in the representation of an ADAPT.

jammcgae was the individual subject of the complaint in question where a quote of something I said in candor, which was accepted in candor at the time, was taken willfully out of context by a former AM (devlen) who actively and passively contributed to jammcgae complained of disposition.

I was the subject an ADAPT late in the summer of 2022 which mischaracterized an incidence, and per the original narrative of the complaint I filed here, was a total and deliberate distortion by my then AM (devlen) who delayed against my repeated callouts and actively contributed to jammcgae personal discomfort complained against. The complaint was generally against two individuals, devlen (no longer with AMAZON) for actual FRAUD in the management transaction, and adcald (L6) for totally and deliberately failing to hear the claim of FRAUD when it was presented.

In my original account of this matter, I reported how because of the sensitivity of the ADAPT, at jammcgae approval out of consideration that her condition was workable, I would have the manager come consult her.

The QUESTION is whether she recalled my radio communication to the manager, and whether she recalls how I reassured her the manager would address her situation.

The QUESTION is also whether she recalled having stated to me she could continue to work in the Pick to Buffer (Puller) capacity until the manager arrived.

Certainly if she had requested immediate relief, it would have been provided.

devlen did not appear for 15-20 minutes, and directly contributed to delays in addressing jammcgae concerns. I radioed him multiple times before my Standard Work Process took me into a different task.

It was unethical and even criminal for him to quote jammcgae in the way that he did, and if there was an extant question of how we were addressing injuries, sickness, and accomodations, the ADAPT did not discuss it. It was to make a political injury against me.

My general perspective is that no single one of the issues rel. was fully verifiable, and the HR team did not bother to conduct a STU with me in a way that was timely to this issue.

It was misused by devlen and adcald primarily, I think, to vent fear and frustration at devlen own personal issues, and adcald personal biases to favor management establishment.

Adcald being the subject here, is extremely aggressive and biased to be postured in Malice over the Appearance of Error. When the subject a FALSE STATEMENT was presented he immediately discredited me. Adcald in this instance disfavors me too much, and prefers total submission to frivolous and destructive expressions of company authority.

Adcald may not have been aware devlen was lying; but he refused to listen when I explained so, refused to return the matter to HR for further STU, and more or less the conversation into dysfunction.

As reported previously, it is a strategy he knows how to maintain when he believes the team is not biased to prevent its occurrence. adcald is capable to deploy falsification and misdirection inappropriately and in a manner which destroys inidividual confidence at the Supervisory and Management relationship.

My demand in this instance is to EXCORIATE the ADAPT in question from my record, or otherwise have it reviewed.

My other demand is to have adcald disciplined or terminated from employment; reinforcement of falsification of behavioral standards of others, beyond violating the rules, is potentially highly extreme. No manager should be allowed to be practice abuse.

It can lend an entire behavioral queue, a tool in social engineering, to disempower and mislead others against the target individual.

REQUEST THAT KERRI A. NOT REVIEW

My original expression of this event was in part based in a statement of how the ADAPT in question was not facially acceptable, for all of the negativity claimed expressed by me it was not invested in credible or coachable representations of actual incidence; sufficient that any actual violation of a company policy were tangible, it was speculated against me in bad faith.

I was traumatized by the presentation for its unexpectedness, and its falsehoods. I refused to acknowledge it - I attempted to discuss the nature of "ACCEPT" and "REJECT" terms on an ADAPT process with Kerri, and should could not clarify that for me which signaled to me that she was actively misleading in the conversation about how much diligence she could have conducted.

Kerri made several critical oversights which amounted to improper deflections of bias;

(1) She appeared to insinuate I may have been using the ethics complaint retributively;
(2) She asserted the authority of the ADAPT without having interviewed the individual whose statement was subject;
(3) She disavowed an understanding of what FRAUD is, as any representational proscription;
(4) She left the dialogue in an unresolved posture, too general, and may have insinuated there was legal context involved.
(5) She was also unable to directly advise Accept/Reject conditions of ADAPTS.

My goal here is to openly and visibly pre-empt any further kind of FALSE representations from Management on site at DUT7 - not to draw general conflicts in the process of reviewing ADAPTS.

I might have treated these discussions very differently; my general impression at this time is that ADAPTs dialogues are not treated as reliable discussions or coachings, the reporting standard in this instance is extremely low.

Kerri's Bias for Action at a truth-finding did not go to the length to interview jammcgae on whether she was aware the Area Manager had been notified by radio to come to her attention.

She may have been left with a wrong impression, and the Management dialogue in this instance may have been knowingly and wrongfully misused by the former AM (devlen), and the current L6 (adcald) at the time of the report.

I struggled to report this to adcald who was in-person at the presentation, and he refused to recognize my objections and reinforced the ADAPT process in the face conflicting information.

adcald expresses improper bias in this instance as person not on-record, but reinforcing a destructive standard when coaching and issuing ADAPTS.

EXHIBIT
17

Kerri struggles to understand in-person how this was the subject of the complaint, and misdirected our conversation to reinforce her discussion of culture as insinuated retribution against the former L4 devlen.

She also lacks supervisory sensitivity over management questions; FRAUD does not even appear to be plausible discussion at issue on an ADAPT.

CONCLUSION

My view on these ADAPTS is finally that no single one of them could have resulted in a disciplinary instance. That is, the ADAPTS were unrecognizable to me after several weeks of delay at issue, so my inclination to accept "coaching" was treated in bad confidence.

Moreover, we never engaged at DUT7 any Seek To Understand conference timely to any single issue so that there was no immediate and personal oversight entailed; I was literally depicted as being aggressive and overbearing; I think the individuals involved in the issue concocted social distortions of the incidences and the discussion in an attempt to valorize themselves while they were actively harming total confidence.

Kerri is not postured to mitigate the complaint on this scale; the relationship between a true or false statement was not investigated sufficiently to maintain confidence in the record of the documentation referenced on ADAPT. This was one of several very hostile situations engendered by [adcald] presumption and false zealousness.

Please conduct further review in light of this complaint, and the lack of disposition thereof.
12/10/2022 6:20 AM
This is a second facsimile report as 256636404601 (report key).
I lost the password to the first.

---

**Follow-Up Questions/Comments**

There are no questions asked or comments from the organization.

---

**Chat Transcripts**

There are no chat transcripts for this incident.



**Carlos <cfv1983@gmail.com>**

# Meet to Speak [ ref:_00D3t2mKvO._5003t1g95Nc:ref ]

**Exact HR** <hr@exact.hr.amazon.dev> Fri, Mar 3, 2023 at 8:30 AM
To: "cfv1983@gmail.com" <cfv1983@gmail.com>

3/3/2023

Dear Carlos,

My name Is Jerry Yeung, HR Investigator from Amazon. I am currently looking into the confidential concern that was raised to our attention.

I would like to speak with you to discuss further on Tuesday, 3/7/2023 **at** 2:00 pm (MST).

If this time does not work for you, please feel free to suggest an alternate date and time.

If this time work for you, please reply to all to this email for your confirmation. Once a date and time are confirmed, I will call you at 801-671-0361 unless you provide another number you prefer me to contact you on.

I look forward to speaking with you.

Jerry Yeung
Amazon HR Investigator

ref:_00D3t2mKvO._5003t1g95Nc:ref

EXHIBIT 17

≡ 

Questions and Comments

Add Follow-Up Notes

Upload Files

Report Details

Print My Report

ISSUE TYPE: FRAUD OR EMBEZZLEMENT

REPORT DETAILS

**Report Submission Date**
2/25/2023

**Reported Company/Branch Information**
Location 989 West Center St
City/State/Zip: North Salt Lake, UT, 84054, United States )

**Amazon Site Code**
DUT7

**Please identify the person(s) engaged in this behavior:**
kerry alger - human resources
HUMAN RESOURCES

**Do you suspect or know that a supervisor or management is involved?**
Yes

**If yes, then who?**
kerry alger is a regional human resourcs manager

**Is management aware of this problem?**
No

**What is the general nature of this matter?**
A question of Negligence or Willful Misconduct, failing to respond and escalate a complaint question left unanswered.

All of keralgr's statements indicated Amazon had difficulty even recognizing the question I presented, which left these questions undefined and our discussion unsatisfactory.

**Where did this incident or violation occur?**
DUT7 - across several HR discussions (unrecorded) and several documents which I am not privvy to.

**Please provide the specific or approximate time this incident occurred:**
The issued generated after the middle of january, when I contacted keralgr requesting further review after keralgr had suggested I do so if I had more questions.

**How long do you think this problem has been going on?**
More than a year

**How did you become aware of this violation?**
It happened to me

**Please identify any persons who have attempted to conceal this problem and the steps they took to conceal it:**
keralgr (allegation)

**Details**
COMPLAINT FOR FURTHER INVESTIGATION
RELATED TO COMPLAINTS 256636404601 (EthicsPoint), 624709432501 (EthicsPoint)

Complaint against keralgr for having left investigation INCOMPLETE.

BASIS
SOCIAL ENGINEERING – a direct attempt to mislead the company/organization about an individual in order to manipulate that individual or manipulate the company culture.

In the two related complaints, these are facsimile complaints, I complained about a Level 6 manager who I described as repeatedly managing and coercing false statements about me.

I have presented for our site, DUT7, at least two of these instances which I think may indicate a deep and extended effort to harm me in order to manipulate and otherwise control certain other elements on site at least since November of 2022.

My present concern is on how the Human Resources team onsite at DUT7 did not fully investigate the questions I presented when reaching its conclusions; meaning I question the motive for concluding the investigation.

Specifically, keralgr may be engaged in COLLUSION to have conducted or maintain elements of SOCIAL ENGINEERING for the following reasons.

(1) I asked critical questions about the origin of content contained in one written ADAPT form, incl. a question of FRAUD in the manager's transaction which keralgr failed to restate.

Log Off

(2) Keralgr failed to recognize the question; when we met face to face on-site on 1/6/2023 she asked me this specifically, what I had intended by use of the word of the "fraud" wherein I related a usage of a Federal criminal statute for guidance

(3) Keralgr failed to clarify standards and practices regarding the ADAPT process, meaning she left this complaint and process vulnerable to further ambiguity after our meeting.

(4) Keralgr may be biased to disfavor the complaint for a perceived lack of diligence on my part, rather than have reviewed it more completely.

In this instance, the term I should clarify, I have accused an L6 manager of enforcing the falsification of behavioral records about me by refusing to listen, and by conspiring with other managers in open hostility to my complaint of misrepresentation of the disciplinary question at hand, and the disciplinary process in general.

The L6 has critically denied access to ethical standards in order to affirm an unethical policy favoring management authority; my general fear is there is a tacit campaign of CHARACTER DEFAMATION ("ASSASSINATION") maintained at DUT7 which is uncharacteristic to any associate.

I asked via email if Keralgr would not, as she verbally offered in our meeting, escalate review of the complaint.

I also amended the original standing complaint to question the individual who was claimed subjected to mistreatment if could recall the steps I took conscientiously, as whether it was plausible an L4 Area Manager (No longer with AMAZON) may have blamed me for his own fault in responding to my requests for his presence on the stow floor.

Keralgr has not responded, and may not have seen my email, and either way did not recognize the structure of the question I presented in a manner to maintain the confidence of the complaint.

GENERAL STATEMENT
I have proceeded these complaints this way in part because I think coercion of false standards is, in a single instance, a completely terminable misconduct, it is a gross misconduct which harms an individual out of criminal contempt for his or her standing in the company.

It is fraud which seeks out ulterior security by undermining the daily and regular efforts of the individual on a basis to compare a preference for FAVORITISM, so that the fraudster expresses FRAUD simultaneously with disinterest in actions of illicit prejudice while perhaps appropriately FAVORING others.

An Operations Manager really cannot ever ethically maintain false standards of interest in the issues of his subordinate managers, the result is that Area Managers become contaminated with the secret history of transgression against subordinates.

This complaint is therefore to move reinvestigation of this matter on a basis demanding a more complex Seek To Understand dialogue, and may involve contacting at least one associate who may have transfered or resigned from the DUT7 jurisdiction.

My understanding is that keralgr will not oversee further review of this question which I develop over time primarily to allow the simplicity of any single investigation to take breadth before generating a comprehensive complaint.
2/25/2023
s/Carlos Velasquez

NOTE: I will be updating this complaint with related documentation in the coming days.

---

**Uploaded Files**

1. EthicsPoint.pdf
   First Related Complaint
   256636404601

   Fraud in Social Engineering - Making false representations about an associate, and refusing to hear how representation of an issue was false - against two managers

   The present complaint relates to how HR did not recognize a question of misrepresentation maintained coercion conducted by a L6 associate in a context free from oversight.

2. EthicsPoint2.pdf
   Second Facsimile Ethics Complaint
   624709432501

   Fraud in Social Engineering, the same complaint of a failure to hear and resolve a question of misrepresentation of issues conducted by an L6 in a context without supervision.

   The second was complaint was opened after the first complaint was thought lost.

3. RE_ HR Investigation .pdf
   Email Communications Referred to from the complaint
   Dates: 1/31/23

---

**Follow-Up Notes**
2/27/2023 10:20 PM

UPDATED: 2/27/23

EXHIBIT
17

**Follow-Up Questions/Comments**
There are no questions asked or comments from the organization.

**Chat Transcripts**
There are no chat transcripts for this incident.







Privacy Statement | Terms of Use | Cookie Statement
© NAVEX Global 2023. All rights reserved.



**Carlos <cfv1983@gmail.com>**

## (no subject)

1 message

**Carlos** <cfv1983@gmail.com>
To: "Velasquez, Carlos" <velaca@amazon.com>

Thu, Dec 22, 2022 at 12:28 PM

Message also forwarded through Amazon internal to keralger@amazon.com

In Reply to Kerri Alger,

Thank you for listening to the complaint and raising attention to the questions I presented.
We met on or about 12/15/22.

For my part, I have a definite conviction that when I find a false or misleading representation of my conduct, and find the individuals around me fail to support me in raising critical questions, as was the nature of the complaint I presented reg. an Adapt which claimed I had disparaged individual associate needs which were totally of critical importance.

In my report to the organization, I wrote how the Area Manager (devlen) had falsified statements of his own neglect and used them against me, retributively.

I have several follow-up questions about the depth of our investigation.

1. Please link or provide for me a whole statement or brief of the ADAPT process. I have undergone not very much training on this subject, and I do not really understand the coaching process. In these instances nature of the document has been left critically vague and I have a lot of difficulty recognizing the discussions with any consistency as they do not often define my conduct directly but are precipitated on a different narrative.

2. Did you interview any of those individuals who submitted related complaints?

3. What about the value of a false representation of incidence rel.? In the complaint I presented I stated that I attempted to raise a question of false representation in the document. The L4 manager had presented a problem he himself engendered as against me, based apparently on the associate involved having perceived that I was somehow at fault.

4. When interviewed, you explained to me the ADAPT process is not ever reviewed for hiring considerations; that seems like an assumption – given these ADAPT forms are a permanent record; will I have sole confidence to those documents or is any high-level manager able to review that documentation?

5. Was the time taken from incidence to report more or less critical to how we found this matter resolved?

Reiterating from the Ethics Complaint, I felt the ADAPT put words into my mouth at the deliberate expense of the truth. I felt the Ops Manager overseeing the ADAPT delivery totally and deliberately failed to represent the highest standard of clarity and respect for the

subject matter.

EXHIBIT 17

We also discussed how the Ops Manager's behavior had been witnessed previously. May I assume this previous incidence was not investigated?

Please update this account as well. Thank you.

Sincerely, Carlos Velasquez
velaca@amazon.com
AMZL-DUT7-PA

If you view the Full Docket you will be charged for 1 Pages $0.10

**General Docket**
**Tenth Circuit Court of Appeals**

**Court of Appeals Docket #:** 22-4098 **Docketed:** 10/19/2022
**Nature of Suit:** 2440 Other Civil Rights
Velasquez v. Baldock, et al
**Appeal From:** United States District Court for the District of Utah - Salt Lake City
**Fee Status:** Fee Paid

**Case Type Information:**
**1)** civil
**2)** USA as party
**3)** -

**Originating Court Information:**
**District:** 1088-2 : 2:22-CV-00133-HCN
**Trial Judge:** Howard C. Nielson, Junior, U.S. District Judge
**Date Filed:** 02/25/2022

| **Date NOA Filed:** | **Date Rec'd COA:** |
|---|---|
| 10/18/2022 | 10/19/2022 |

EXHIBIT 17

| | | |
|---|---|---|
| 11/02/2022 | | [10952169] Order filed by Judges Matheson and Bacharach denying appellant's motion for permission to file electronically. Served on 11/02/2022. [22-4098] [Entered: 11/02/2022 01:53 PM] |
| 11/08/2022 | | [10953653] Appellant's motion filed by Carlos Velasquez to reconsider the denial of his ECF filing privileges [10952169-2]. Served on 11/05/2022. Manner of Service: US mail. [22-4098] [Entered: 11/08/2022 11:55 AM] |
| 11/08/2022 | | [10953779] Order filed by Judges Matheson and Bacharach denying appellant's motion to reconsider the denial of ECF filing privileges filed by Mr. Carlos Velasquez. Served on 11/08/2022. [22-4098] [Entered: 11/08/2022 02:09 PM] |
| 11/14/2022 | | [10955135] Entry of appearance filed by Mr. Carlos Velasquez. CERT. OF INTERESTED PARTIES: y. Served on 11/14/2022. Manner of Service: email [22-4098] [Entered: 11/14/2022 03:43 PM] |
| 12/01/2022 | | [10959079] Appellant's brief filed by Mr. Carlos Velasquez. [22-4098] [Entered: 12/01/2022 01:54 PM] |
| 12/01/2022 | | [10959082] Appellant's motion for review en banc filed by Mr. Carlos Velasquez. Served on 11/28/2022. Manner of Service: email. [22-4098] [Entered: 12/01/2022 02:03 PM] |
| 12/01/2022 | | [10959083] Letter (envelope) sent with brief and motion received from Mr. Carlos Velasquez but not filed. [22-4098]--[Edited 12/05/2022 by JM Certificate of Service attached.] [Entered: 12/01/2022 02:05 PM] |
| 12/05/2022 | | [10959576] Order filed by Clerk of the Court referring Appellant's motion for review en banc to the panel of judges that will later be assigned to consider this case on the merits (no ruling will issue at this time). Served on 12/05/2022. [10959082-2]. Served on 12/05/2022. [22-4098] [Entered: 12/05/2022 11:01 AM] |
| 01/11/2023 | | [10968528] Brief Concerning Replies received from Mr. Carlos Velasquez but not filed. [22-4098] [Entered: 01/11/2023 11:26 AM] |
| 01/11/2023 | | [10968682] Appellant's Brief Concerning Replies, construed as a supplement to the opening brief filed by Mr. Carlos Velasquez. Original and 7 copies. [22-4098] [Entered: 01/11/2023 02:26 PM] |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/09/2023 03:58:04 | | | |
| **PACER Login:** | admin2246378 | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** | 22-4098 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |